# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALMIRALL, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TORRENT PHARMACEUTICALS, LTD.,<br><br>    Defendant. | C.A. No. 20-1373-LPS |

Jack B. Blumenfeld, Jeremy A. Tigan, and Anthony D. Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

James S. Trainor and R.J. Shea, FENWICK & WEST LLP, New York, NY

Elizabeth B. Hagan, FENWICK & WEST LLP, Seattle, WA

    Attorneys for Plaintiff


Neal C. Belgam and Eve H. Ormerod, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE

Constance S. Huttner, Andrew J. Miller, Stuart D. Sender, and James P. Barabas, WINDELS MARX LANE & MITTENDORF, LLP, Madison, NJ

    Attorneys for Defendant

## **MEMORANDUM OPINION**

July 13, 2021
Wilmington, Delaware

UNSEALED ON
JULY 16, 2021

*[signature]*

**STARK, U.S. District Judge:**

Plaintiff Almirall, LLC ("Almirall") sued Defendant Torrent Pharmaceuticals Ltd. ("Torrent") for infringement of U.S. Patent No. 9,517,219 ("the '219 patent").[1] Torrent has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that its proposed generic version of Almirall's drug does not infringe the '219 patent. For the reasons explained below, the Court will grant Torrent's motion.

## BACKGROUND

Almirall holds New Drug Application ("NDA") No. 207154, which the U.S. Food and Drug Administration ("FDA") approved in February 2016. (D.I. 1 ("Compl.") ¶ 18) Almirall's NDA describes a topical drug product containing 7.5% by weight of the active ingredient, dapsone. (*Id.*) The drug product is used to treat acne vulgaris. (*Id.*) Almirall markets and sells its drug product under the trade name "ACZONE® Gel, 7.5%." (*Id.* ¶ 19)

For ACZONE® Gel, 7.5%, Almirall listed the '219 patent in the FDA's "Approved Drug Products with Therapeutic Equivalence Evaluations," more commonly known as the "Orange Book." (*Id.* ¶ 20) The '219 patent describes and claims methods for treating acne vulgaris or rosacea by administering pharmaceutical compositions containing dapsone and certain inactive ingredients. (*See generally* D.I. 1-1) Both independent claims of the '219 patent (and therefore all dependent claims) require the pharmaceutical compositions to have "a polymeric viscosity

---

[1] The instant case arises under the Hatch-Waxman Act, more formally known as the Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585 (1984). For an explanation of relevant provisions of the Hatch-Waxman Act, see *Caraco Pharmaceutical Laboratories, Ltd. v. Forest Laboratories, Inc.*, 527 F.3d 1278, 1282-85 (Fed. Cir. 2008).

1

builder comprising acrylamide/sodium acryloyldimethyl taurate copolymer." ('219 patent at 16:8-10, 31-33)

Torrent holds Abbreviated New Drug Application ("ANDA") No. 214722, which describes a generic version of ACZONE® Gel, 7.5%. (Compl. ¶¶ 21-23; *see also* D.I. 18 at 11; D.I. 9-1 Ex. A at 1) Torrent's ANDA product does not contain acrylamide/sodium acryloyldimethyl taurate copolymer ("A/SA," also known as "Sepineo™ P 600"). (*See* D.I. 9-1 Ex. B at #134) Instead, Torrent's ANDA product contains carbomer homopolymer type C, also known as "Carbopol®." (*Id.*) Given this difference between Almirall's ACZONE® Gel, 7.5% and Torrent's ANDA product, Torrent's ANDA includes a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV), or "Paragraph IV," that the '219 patent is invalid[2] and/or not infringed by Torrent's ANDA product. (Compl. ¶ 25; *see also* D.I. 9-1 Ex. A at 2) Torrent's ANDA also includes a Paragraph IV certification for U.S. Patent No. 9,161,926 ("the '926 patent"), the parent of the '219 patent. (D.I. 9-1 Ex. A at 2; *see also id.*, Ex. C at #139; D.I. 1-1 at #9)

At the end of August 2020, Torrent sent Almirall a notice letter regarding the submission of Torrent's ANDA to the FDA. (Compl. ¶¶ 24-27) The notice letter contained an offer of confidential access, which would have allowed Almirall to review portions of Torrent's ANDA subject to certain conditions. (D.I. 9-1 Ex. A at 3) Almirall declined the offer. (*See* D.I. 18 at

---

[2] The Patent Trial and Appeal Board has issued a final written decision in an *inter partes* review of the '219 patent, which determined that all the '219 claims are unpatentable for obviousness. *See Amneal Pharm. LLC v. Almirall, LLC*, IPR2019-00207, Paper No. 58 (P.T.A.B. May 29, 2020). Almirall has appealed that decision to the Federal Circuit. *See Almirall, LLC v. Amneal Pharm. LLC*, No. 20-2331 (Fed. Cir.) (docketed Sept. 28, 2020).

12; D.I. 27 at 11)

On October 9, 2020, Almirall filed this lawsuit against Torrent for infringement of the '219 patent, which triggered a 30-month stay of final FDA approval of Torrent's ANDA. *See* 21 U.S.C. § 355(j)(5)(B)(iii). Torrent answered the complaint and filed a counterclaim seeking a declaratory judgment that it does not infringe the '219 patent. (D.I. 9) After Almirall answered the counterclaim (D.I. 14), Torrent moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (D.I. 17) According to Torrent, it is entitled to judgment of non-infringement because (i) the parties agree that there is no literal infringement of the '219 patent,[3] and (ii) there also cannot be infringement under the doctrine of equivalents ("DOE") because prosecution history estoppel bars Almirall from asserting equivalents for A/SA. (*See* D.I. 18 at 2-3)

The Court received full briefing on the motion (*see generally* D.I. 18, 27, 32) and heard oral argument during a teleconference on April 22, 2021 (*see* D.I. 45) ("Tr."). The parties also submitted a post-hearing status report providing their positions on several issues that arose for

---

[3] Literal infringement would require the presence of A/SA in the accused drug formulation. *See, e.g., Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297, 1302 (Fed. Cir. 2001) ("Literal infringement requires a patentee to prove by a preponderance of the evidence that every limitation of the asserted claim is literally met . . . ."). Torrent's ANDA product does not include A/SA. Thus, Almirall concedes that Torrent's product does not literally infringe the claims of the '219 patent. (Tr. 17)

3

the first time during the hearing. (*See* D.I. 47)[4]

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment "[a]fter pleadings are closed," as long as it is "early enough not to delay trial." When evaluating a defendant's motion for judgment on the pleadings, the Court must accept as true all factual allegations in the complaint, viewing them in the light most favorable to the nonmoving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). This standard is the same one that applies to a motion to dismiss under Rule 12(b)(6). *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The Court will not grant a Rule 12(c) motion "unless the movant clearly establishes that no material issue of fact remains to be resolved" and that it is "entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221.

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that documents integral to pleadings may be considered on Rule 12(c) motion). "The issue is not whether a plaintiff will ultimately prevail but whether the

---

[4] In the joint status report, Torrent notified the Court that it received tentative FDA approval of its ANDA on April 23, 2021. (D.I. 47 at 3) According to Torrent, it is prepared to launch its ANDA product "promptly" after it receives final approval from the FDA, which Torrent expects to follow "quickly" after an order from this Court ruling in Torrent's favor. (*Id.*)

4

claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420. Thus, a court may grant a motion for judgment on the pleadings only if, after making all reasonable inferences in the plaintiff's favor, the "plaintiff is not entitled to relief." *Maio*, 221 F.3d at 482.

## DISCUSSION

As a preliminary matter, Almirall argued in its brief that the Court should deny Torrent's motion simply because Almirall pleaded a cause of action for patent infringement under 35 U.S.C. § 271(e)(2), which the Hatch-Waxman Act established. (*See* D.I. 27 at 6-8) During the hearing, however, Almirall conceded – as it had to – that the Court may grant a Rule 12(c) motion in an ANDA case. (Tr. 22) Accordingly, the statutory basis for the cause of action in this case does not, by itself, preclude the grant of Torrent's motion. *See, e.g., Bayer Schering Pharma AG v. Lupin, Ltd.*, 676 F.3d 1316 (Fed. Cir. 2012) (affirming grant of Rule 12(c) motion in Hatch-Waxman case).

In its brief, Almirall made other incorrect procedural arguments. Almirall contended that, in evaluating the Rule 12(c) motion, it would be improper for the Court to consider portions of Torrent's ANDA and statements in the prosecution histories of the '219 and '926 patents. (*See* D.I. 27 at 11-16) During the hearing, Almirall appropriately abandoned these positions. (Tr. 28-29 (admitting that Court may consider ANDA, including "truth of what is in the formulation" of Torrent's ANDA product); *id.* at 29-30 ("If your question was can you consider the prosecution history, then the answer is yes because . . . it is a matter of public record.")) Almirall's new positions are consistent with binding case law. *See, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (noting that courts may

consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case"); *AstraZeneca Pharm. LP v. Apotex Corp.*, 669 F.3d 1370, 1378 n.5 (Fed. Cir. 2012) (applying Third Circuit law and holding that district court did not err in considering ANDA). There is no dispute over the authenticity of Torrent's ANDA or the prosecution histories, so the Court has considered them in connection with the pending motion.

Turning to the merits, Torrent's Rule 12(c) motion is grounded on the doctrine of argument-based prosecution history estoppel. "Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013). Argument-based prosecution history estoppel bars a patent owner from asserting equivalents for a claim element when that assertion would contradict statements made to the patent examiner in the course of obtaining the patent. *See, e.g., Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1380 (Fed. Cir. 2019). Statements may give rise to estoppel even if they were not made for the purpose of securing allowance of the patent claims. *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007). For argument-based prosecution history estoppel to apply, the surrender of equivalents must be "clear and unmistakable." *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006) (internal quotation marks omitted). Although prosecution history estoppel may implicate subsidiary factual questions, the ultimate determination is a legal question. *See Pharma Tech Sols.*, 942 F.3d at 1380.

In this case, the prosecution history clearly and unmistakably demonstrates that the applicant surrendered Carbopol® as an equivalent for the claimed A/SA. During the

prosecution of the '926 patent, the applicant stated:

> The instant claims recite a new formulation of dapsone wherein the active ingredient is about 7.5 % w/w dapsone and an entirely new thickening agent is employed. ***The new formulation of the instant claims does not include a carbomer such as Carbopol®***, but instead utilizes as [sic] acrylamide/sodium acryloyldimethyl taurate copolymer, also known as "Sepineo™ P 600," and at a much higher concentration (about 2% to about 6% w/w) as compared to what Garrett teaches for its thickening agent.
>
> Hani teaches a crosslinked PVP polymer for use in low pH topical formulations. While Hani may teach that acrylamide/sodium acryloyldimethyl taurate copolymer may be useful as an additional thickener with its PVP polymer, it certainly does not teach or suggest the use of Sepineo™ P 600 as the sole thickener in a topical dermatological formulation prepared with an active pharmaceutical ingredient. Moreover, the only mention of an acrylamide/sodium acryloyldimethyl taurate copolymer is found in paragraph [00118] of Hani, where it is included in a vast laundry list of other potential second thickeners.

(D.I. 9-1 Ex. D at #169) (emphasis added and omitted) The applicant also argued that "[t]he use of Sepineo™ P 600 as *the sole thickening agent* in a topical dermatological formulation" was one of the "three significant distinctions" between the claimed subject matter and the prior art. (*Id.*) (emphasis added)

It is appropriate to consider the prosecution history of the '926 patent given its relationship to the '219 patent-in-suit. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333 (Fed. Cir. 2003) ("[P]rosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications."). "When the application of prosecution disclaimer involves statements from prosecution of a familial patent relating to the same subject matter as the claim language at issue in the patent being construed, those statements in the familial application are relevant in construing the claims at issue." *Ormco Corp. v. Align Tech., Inc.*,

7

498 F.3d 1307, 1314 (Fed. Cir. 2007). The '926 patent is the parent of the '219 patent, and the disputed claim elements are nearly identical in both patents.

Moreover, during prosecution of the '219 patent, the applicant expressly adopted the same arguments – including the disclaimer quoted above – that the applicant had made during prosecution of the '926 patent. (*See* D.I. 9-1 Ex. D at #182) ("The Applicants note that the arguments presented below and the affidavit submitted herewith are substantially the same or the same as presented in the parent case (US 14/082,955), which claimed the formulation recited in the currently claimed method of use.") Most notably, the applicant again stated expressly:

> The new formulation of the instant claims ***does not include a carbomer such as Carbopol®***, but instead utilizes as [sic] acrylamide/sodium acryloyldimethyl taurate copolymer, also known as "Sepineo™ 600" . . . .

(*Id.* at #183) (emphasis added) The applicant again referred to A/SA as the "sole thickener" or "sole thickening agent" multiple times. (*Id.*)

These unambiguous statements in the prosecution history meet the high bar for a "clear and unmistakable" surrender of Carbopol® as a possible equivalent for A/SA. *See Conoco*, 460 F.3d at 1364; *see also Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1161 (Fed. Cir. 2019). It is difficult to imagine a clearer disclaimer of Carbopol® than "[t]he new formulation of the instant claims does not include a carbomer such as Carbopol®." (D.I. 9-1 Ex. D at #169, #183; *see also* Tr. 52-53 (Almirall conceding that this statement appears in prosecution history of '219 patent))[5]

---

[5] Citing *Biogen, Inc. v. Berlex Laboratories, Inc.*, 318 F.3d 1132, 1139, 1141 (Fed. Cir. 2003), Almirall argues that the Court should not consider the prosecution history of the '926

8

Almirall does not offer any persuasive argument as to how the statements in the prosecution history might mean anything other than what they plainly say. Instead, Almirall suggests that it is entitled to discovery before the Court can enter judgment. (*See* D.I. 27 at 8-11) In the absence of any plausible argument as to how it is permitted to allege that Carbopol® is equivalent to A/SA for purposes of infringement of the '219 patent, however, Almirall is not entitled to discovery. *See, e.g., Amgen Inc. v. Coherus BioSciences, Inc.*, C.A. No. 17-546-LPS-CJB D.I. 59 at 5 n.5 (D. Del. Jan. 11, 2018), *adopted*, 2018 WL 1517689 (D. Del. Mar. 26, 2018), *aff'd*, 931 F.3d 1154, 1161 (Fed. Cir. 2019). Almirall has tried to fix this omission by contending – for the first time at the hearing, and then again in the joint status report – that arguments made during prosecution do not give rise to estoppel when they pertain to a combination of claim elements rather than a particular claim element. (Tr. 48-49, 53-54; *see also* D.I. 47 at 4) In Almirall's view, the law "ought to operate" such that only arguments distinguishing nearly identical prior art give rise to estoppel. (*See* Tr. 54) Almirall's belated argument is not a fair statement of the law. *See, e.g., PODS*, 484 F.3d at 1368 (stating that estoppel may arise from arguments not necessary to secure allowance). Additionally, the Court agrees with Torrent, which states:

> If estoppel applies, then the technical equivalence of Carbopol 980

---

parent patent because the '219 patent is a divisional and argument-based estoppel does not carry through to a divisional. (*See* D.I. 27 at 10) The Court disagrees. Even assuming that *Biogen* sets out a general rule, here the applicant explicitly incorporated arguments made during the prosecution of the '926 patent while prosecuting the divisional '219 patent-in-suit. *See, e.g., Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1373 (Fed. Cir. 2005). Moreover, the relevant remarks in both prosecution histories are the same. Accordingly, even if the Court limited its review to the prosecution history of the '219 patent alone, the Court would grant Torrent's motion for the same reasons explained in this opinion.

9

> and A/SA is wholly irrelevant . . . . Torrent's argument is that
> since Almirall told the Patent Office that its invention required
> A/SA, and ***not*** Carbopol 980, as the polymeric viscosity builder,
> and that A/SA has unexpected advantages over Carbopol 980, it
> disclaimed Carbopol 980 and a reasonable competitor is entitled to
> rely on these representations.

(D.I. 32 at 10)

Almirall does not help its case by disparaging Torrent's focus on certain statements in the prosecution history as "self-serving." (*See* D.I. 27 at 10, 11, 16) It is entirely appropriate for Torrent to highlight what it contends are the most relevant portions of the prosecution history. The failing is on Almirall's part, which did not direct the Court's attention to any other portions of the prosecution history from which the Court could reach the conclusion that Almirall prefers. (*See, e.g.*, Tr. 24-25) In the end, Almirall simply cannot escape the applicant's clear and unmistakable statement that the claimed formulations "do not" contain Carbopol®.

The Court recognizes that another judge of this court denied a similar motion filed by a different generic pharmaceutical company in another case involving same NDA for ACZONE® Gel, 7.5%. *See Almirall LLC v. Taro Pharm. Indus. Ltd.*, C.A. No. 17-663-JFB-SRF D.I. 39 (D. Del. Nov. 28, 2017). Almirall's efforts to align itself with the outcome in that case are unavailing. As an initial matter, the Court has discretion to deny a Rule 12(c) motion, *see, e.g.*, Wright & Miller, 5C *Federal Practice and Procedure* § 1367 (3d ed. Apr. 2021) (noting that Court may postpone determination of Rule 12(c) motion until trial), and another judge's decision to deny a similar motion in a different case does not require this judge to do the same here. Moreover, Hatch-Waxman trials are almost always bench trials, so the Court may choose in any particular Hatch-Waxman case (and likely the vast majority of them) to evaluate prosecution

history estoppel at trial, as the Court will usually make a better decision when it has a full evidentiary record and the opportunity to consider at length all aspects of the parties' disputes. *See, e.g.*, *Silvergate Pharm., Inc. v. Bionpharma Inc.*, 2021 WL 1751148, at *27-31 (D. Del. Apr. 29, 2021) (concluding, after bench trial, that argument-based prosecution history estoppel barred assertion of equivalent); *Silvergate Pharm., Inc. v. Bionpharma Inc.*, C.A. No. 18-1962-LPS D.I. 97 (D. Del. May 6, 2020) (denying motion for leave to file Rule 12(c) motion based on prosecution history estoppel); *see also generally Bayer v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1254 (Fed. Cir. 2000) ("[T]estimony as to what a reasonable competitor would conclude from the prosecution history cannot create a genuine issue of material fact so as to bar summary judgment. Such testimony is only a tool, which the judge can use at his or her discretion, to aid in the legal determination of prosecution history estoppel."). That some other case (even a related case) proceeded toward trial does not necessarily mean that the instant case is not amenable to resolution on a motion for judgment on the pleadings.

Furthermore, the circumstances presented in *Taro* were not as straightforward as the situation here. In *Taro*, the generic pharmaceutical company requested leave to file a motion for early summary judgment on whether the previous NDA holder was barred from asserting equivalents of A/SA based on the statements made during prosecution. (C.A. No. 17-663 D.I. 39 ¶ 3) Almirall alleged that Taro used a "multi-component" polymeric viscosity builder in its proposed drug product. (*See id.*) Because the language "consisting of" was amended during prosecution to become "comprising," the *Taro* case presented more complicated questions of whether a multi-component polymeric viscosity builder still infringed the '219 patent. (*See id.*) The Court, therefore, denied the motion, determining that fact discovery, expert discovery, and

11

claim construction would be necessary before resolving the parties' infringement dispute. (*See id.* ¶¶ 3-5)

In contrast to *Taro*, Almirall's briefing in this case does not point to anything specific that could occur in future proceedings that would potentially lead to resolution of the infringement issue in Almirall's favor. During the hearing, Almirall argued for the first time that its DOE theory in the instant case also involves identifying multiple components in Torrent's ANDA product as the polymeric viscosity builder. (*See* Tr. 12-13, 16-17) Almirall's brief does not contain any reference to this theory. (*See id.* at 51-52) Despite Almirall's protest to the contrary (*see id.* at 13-14), it did have a chance to raise this argument, as it could have included it in its answering brief. Particularly given that this is evidently Almirall's sixth or seventh infringement case involving the same NDA and same patent (*see id.* at 12-13), there is no excuse for Almirall omitting from its brief what it now, belatedly, seeks to feature as its key theory of DOE infringement.

The Court was not obligated to hear oral argument on Torrent's motion. *See* D. Del. LR 7.1.4 ("An application for oral argument may be granted or denied, in the discretion of the Court."). It would have been entirely proper for the Court to have decided the motion based solely on the briefing, in which case the Court would have had no way to consider arguments Almirall only raised for the first time after briefing. It follows, then, that the Court is not required to consider arguments raised for the first time at oral argument. *See, e.g., Tomasko v. Ira H. Weinstock, P.C.*, 357 F. App'x 472, 479-80 (3d Cir. 2009) (noting procedural unfairness of permitting party to prevail on argument raised for first time at oral argument); *see also generally* D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material

12

for the reply brief which should have been included in a full and fair opening brief.").[6] In the Court's view, then, Almirall forfeited its ability to raise a multi-component thickener theory as a basis for denying Torrent's Rule 12(c) motion.[7]

At various points, Almirall has advanced arguments regarding claim construction purportedly imposing an obstacle to granting Torrent's motion. Those arguments are unpersuasive. First, in its brief, Almirall generally argued that possible developments during claim construction should stop the Court from granting a Rule 12(c) motion. (*See* D.I. 27 at 8-11) Before the hearing, however, the Court signed a stipulation submitted by the parties that agreed on constructions for two claim terms, leaving no claim construction disputes for the Court to resolve at any later point in this case. (*See* D.I. 44) The stipulation vitiates whatever force Almirall's argument may have otherwise had.

During the hearing, Almirall argued that the agreed-upon construction of "polymeric viscosity builder" leaves open the possibility of a multi-component thickener. (Tr. 8-9) As

---

[6] In the post-argument status report, Almirall asked for the opportunity to submit additional briefing. (D.I. 47 at 4) The Court denied the request, stating that it would instead "decide Torrent's motion . . . based on the briefing as well as arguments properly raised during the hearing." (D.I. 48) (internal citations omitted)

[7] The Court is not holding that Almirall would be precluded from pursuing its multi-component thickener DOE theory if this case were to proceed. The Court understands that Almirall's preliminary infringement contentions were not due until after the briefing on Torrent's Rule 12(c) motion was completed. (*See* D.I. 36) Torrent's filing of its 12(c) motion and opening brief, however, created an obligation for Almirall to respond with whatever arguments it wished the Court to consider in deciding the motion. Almirall chose, for whatever reason, not to disclose in its brief that it believes it can prove infringement by equivalents based on the alleged presence of a multi-component thickener in Torrent's ANDA product. Accordingly, Torrent is not required to respond to this contention in connection with its motion, and the Court is not required to consider it.

13

Torrent persuasively argued, however, the relevant claim term is "A/SA," not "polymeric viscosity builder." (*Id.* at 33, 46; *see also id.* at 56 (Almirall not disputing Torrent's presentation on this point)) In any event, even if "polymeric viscosity builder" were the relevant claim term, Almirall forfeited its opportunity to oppose the motion based on multi-component thickeners when it chose not to include these arguments in its brief, as explained above.

Lastly, Almirall suggests that Torrent's motion is undermined by the fact that Torrent did not raise the potential surrender of equivalents during the parties' claim construction discussions. (*See* Tr. 58) (noting that Torrent "could have argued for a negative claim construction") Almirall admits that prosecution history estoppel is a "different legal animal[]" from prosecution disclaimer. (*Id.* at 7-8; *see also id.* at 57) The former applies as part of an infringement analysis, while the latter is part of claim construction. *See Trading Techs.*, 728 F.3d at 1321-22. Torrent did not weaken its position on estoppel by respecting the distinctness of the two legal doctrines. (*See* Tr. 64) (Torrent recognizing that it could have pursued "two alternative legal theories")

In sum, this case involves an unusual set of circumstances: (i) a clear and unmistakable surrender of an equivalent during prosecution, (ii) an agreement that there are no claim construction disputes for the Court to resolve, (iii) no identification of subsidiary factual disputes, and (iv) a failure by the patentee to meaningfully address the merits of the defendant's motion in its brief. Under this totality of the circumstances, it is appropriate for the Court to resolve this case on a motion for judgment on the pleadings, even if the same may not be true in many (or most) other cases. Accordingly, the Court will grant Torrent's Rule 12(c) motion.

## CONCLUSION

For the foregoing reasons, Torrent's motion for judgment on the pleadings (D.I. 17) will be granted. An appropriate order follows.