**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ALMIRALL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TORRENT PHARMACEUTICALS, LTD., <br><br> Defendant. | C.A. No. 20-1373-LPS <br><br> **Original Version Filed: August 5, 2021** <br><br> **Public Version Filed: August 12, 2021** |

**TORRENT PHARMACEUTICALS, LTD.'S LETTER IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

SMITH, KATZENSTEIN & JENKINS LLP

Andrew J. Miller
Constance S. Huttner
James P. Barabas
WINDELS MARX LANE
& MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
973-966-3200
amiller@windelsmarx.com
chuttner@windelsmarx.com
jbarabas@windelsmarx.com

Dated:  August 5, 2021

Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
1000 West Street, Suite 1501
Wilmington, DE 19801
nbelgam@skjlaw.com
eormerod@skjlaw.com

*Attorneys for Defendant*
*Torrent Pharmaceuticals, Ltd.*

Dear Judge Stark:

Defendant Torrent Pharmaceuticals Ltd. ("Torrent") hereby opposes Plaintiff Almirall, LLC's ("Almirall") Motion for Leave to Amend the Complaint ("Motion"), D.I. 53, in view of the Court's Opinion, D.I. 50, and Order granting the motion for judgment on the pleadings, D.I. 51.

## I.     Introduction

This Court did not dismiss Almirall's existing complaint because of a pleading defect. Rather, it granted Torrent's motion because it found *as a matter of law* that Almirall is estopped from relying on the doctrine of equivalents by virtue of its many statements to the patent office that its patent claims did not cover formulations that included Carbopol. Indeed, as the Court noted in its Opinion, D.I. 50, Almirall could not have been clearer when it told the Patent Office that "[t]he new formulation of the instant claims ***does not include a carbomer such as Carbopol®,*** but instead utilizes as [sic] acrylamide/sodium acryloyldimethyl taurate copolymer, also known as "Sepineo™ 600" . . .." D.I. 9-1 Ex. D at 183 (emphasis added). Nothing in Almirall's proposed amended complaint erases this clear disclaimer or explains why the Court's conclusion, that there is argument-based estoppel as a matter of law, would not apply equally to Almirall's proposed amendment. Almirall's proposed amendment is, therefore, futile because it would not withstand a motion to dismiss.

Almirall's Motion should also be rejected because its proposed amendment does not address the claim term that the Court relied on to find estoppel.  The Court's Opinion clearly stated that "the relevant claim term is 'A/SA,' not 'polymeric viscosity builder.'" D.I. 50, p. 14.  Yet, Almirall's proposed amendment *nowhere* alleges that Torrent's formulation contains any ingredient or combination of ingredients that is equivalent to A/SA. Rather, it asserts that ███ ████████████████████████████████████████████████████████████ is equivalent to the claimed polymeric viscosity builder. This allegation entirely misses the mark. There is no dispute in the case that Torrent's product includes a polymeric viscosity builder (Carbopol). This same polymeric viscosity builder (Carbopol) was included in the Garrett reference that Almirall distinguished during prosecution, ██████████████████████. Accordingly, Almirall's proposed amendment adds nothing to this case that would bring about a different result.

The Court should also deny Almirall's Motion because Almirall should not be rewarded for its dilatory tactics, and Torrent would be prejudiced by allowing Almirall to amend. Almirall has been on notice of Torrent's argument-based estoppel defense since it received Torrent's notice letter on August 26, 2020. Moreover, it received a complete copy of Torrent's ANDA disclosing its formulation on October 19, 2020. Almirall nonetheless failed to include any of the proposed allegations relating to prosecution history in its original complaint and has made no effort until now to amend its complaint to argue that Torrent's ANDA product contains a "multi-component" thickener. Torrent invested substantial money and effort moving for judgment on the pleadings on Almirall's original complaint and the Court spent considerable time deciding Torrent's motion. This money and effort will be entirely wasted if the Court allows Almirall a "do-over" by permitting it to amend. Allowing Almirall to amend will also give unwarranted credence to Almirall's ongoing efforts to derail the launch of Torrent's ANDA product, which is awaiting imminent final approval from the FDA. Indeed, Almirall has already argued to the FDA that Torrent's ANDA should not receive final approval while its motion to amend is pending.

1

## II.     Argument

### A.  Legal Standards.

Under Rule 15(a)(2), Almirall is not entitled to amend its complaint if its proposed amendment would be futile, or if it unduly delayed and allowing the proposed amendment would result in prejudice to Torrent. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174-75 (3d Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (While leave to amend should "be freely given when justice so requires," the Court may deny a request to amend for any number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, [and] futility of amendment.").

Futility means that the complaint, as amended "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) *see also Koken v. GPC Int'l, Inc*., 443 F. Supp. 2d 631, 634 (D. Del. 2006) ("Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted."). The nature of the defect in a pleading – legal or factual – determines whether the deficiency can be corrected by amendment and therefore whether a district court should exercise its discretion to grant leave to replead. *United States of America v. Union Corp.*, 194 F.R.D. 223, 237 (E.D. Pa. June 12, 2000). Where, as here, a "dismissal is based in whole or in part on the legal insufficiency of the claim, amendment would be futile and leave to amend need not be granted." *Id.* (citations omitted). This is because "[i]n a case of legal insufficiency, even the pleading of additional facts, or the pleading of facts with greater particularity, would not enable the claim to survive a Rule 12(b)(6) motion, because the defect in the pleading is the absence of any legal basis for recovery on the claim." *Id.* (citation omitted).

With respect to undue delay, the Third Circuit "has declined to reward a wait-and-see approach to pleading," explaining that "'[w]hen a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied.'" *Jang M.D. v. Bos. Sci. Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013) (quoting *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)). Similarly, the Federal Circuit has affirmed the denial of a motion to amend where the movant "could have included [the proposed allegations in the complaint] at the outset of the litigation but made the conscious tactical decision not to," and the motion was essentially "a last-ditch attempt to avoid the case being dismissed in its entirety." *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 508, 510 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012). Further, a non-moving party may suffer undue prejudice if the proposed amendment necessitates expending additional costs and resources to conduct additional discovery or additional preparation to defend against new facts or theories alleged. *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001).

### B.  The Court Should Deny the Motion Because the Proposed Amendment Is Futile

Almirall's proposed amendment is futile for at least two reasons: first, as noted above, Almirall's proposed amended complaint does not identify any alleged equivalent to the "A/SA" claim term which the Court indicated was key to its decision; second, none of the additional allegations in the proposed amendment alters the fact that Almirall made the arguments to the patent office that the Court relied on for its decision.

Almirall concedes in its Motion that it "proposes a pleading alleging that the *polymeric viscosity builder* employed in the accused product meets the corresponding limitation of the '219 Patent claims under the doctrine of equivalents." Similarly, paragraph 92 of Almirall's proposed amended complaint alleges that "Torrent's ANDA Product contains a multi-component viscosity builder that meets the 'about 2% to about 6% w/w of a *polymeric viscosity builder*' limitation under the doctrine of equivalents." D.I. 53-1, ¶ 92. Critically, however, Almirall's proposed amendment leaves out the key portion of its claims for purposes of estoppel: A/SA. As the Court explained, "Torrent persuasively argued … that t*he relevant claim term is 'A/SA,'* not 'polymeric viscosity builder.'" (citations omitted). Almirall's proposed amendment does not address this claim term or allege that there is any equivalent to *A/SA* in Torrent's ANDA product.

Almirall's proposed amendment also does not acknowledge its repeated assertions to the Patent Office that its claimed invention "*does not include a carbomer such as Carbopol®*." D.I. 9-1 Ex. D at 183 (emphasis added). Instead, Almirall seeks to distract the Court by focusing on other, irrelevant aspects of the prosecution history. For example, Almirall includes multiple paragraphs in its proposed amendment arguing that the patent examiner should not have found a prima facie case of obviousness, and that different polymeric viscosity builders are not interchangeable. Proposed Amended Complaint ¶¶ 24, 64, 79, and 81. None of these allegations relate to estoppel or change the fact that Almirall expressly told the Patent Office that "[t]he new formulation" of its claims "*does not include a carbomer such as Carbopol®*." D.I. 9-1 Ex. D at 183 (emphasis added). Indeed, if anything, Almirall's new allegations provide additional support for the Court's conclusion that the presence of A/SA and the disclaimer of Carbopol was key to the allowance of Almirall's claims. Some examples are provided below:

> **At the time of the invention, Sepineo™ P 600 was a novel polymeric viscosity builder. The prior art did not disclose topical dapsone formulations using Sepineo™ P 600 or employing any other polymeric viscosity builder in which the sole polymeric entity is A/SA**. At the time of the invention, **only one drug had ever been approved by the FDA which contained an A/SA-based thickener agent**; that drug did not contain dapsone as an active pharmaceutical agent and in that drug the thickening agent used constitutes A/SA together with other inactive excipients.

Proposed Amended Complaint, ¶ 24 (emphasis added).

> The Warner Declaration reported that one embodiment of the formulation recited in the claims, in which the polymeric viscosity builder is **the A/SA-comprising Sepineo commercial thickener, better inhibited polymer aggregates and provided for smaller dapsone particle size distributions as compared with formulations employing Carbomer 980**, a commercial thickening agent used in prior art topical dapsone formulations. . ..

Proposed Amended Complaint, ¶ 64 (emphasis added).

> In view of these multiple differences between the formulations disclosed in the then-asserted prior art and the claimed compositions *as a whole*, the '926 Applicants concluded, "[t]herefore, as the compositions of Garrett and Hani are distinct, Hani provides no motivation to one of ordinary skill in the art having access to Garrett to substitute the

3

"CARBOPOL® 980" of Garrett with the presently claimed [A/SA]." *Id.* at 10-11 (emphases added).

Proposed Amended Complaint, ¶ 81 (emphasis in proposed amended complaint).

These new allegations further confirm that Almirall argued for patentability based on the presence of A/SA and the absence of Carbopol. They also answer Almirall's new argument that the polymeric viscosity builder limitation in its claims is satisfied ███████████████████ ███████████████████  While this limitation may be open to *other* thickening agents, as Almirall argues, Almirall's statements during prosecution leave no doubt that Carbopol must not be present. Almirall's statements also demonstrate that Almirall did not regard Carbopol as equivalent to A/SA because A/SA allegedly resulted in fewer polymer aggregates and smaller particle size than Carbopol.

In this regard, it should be noted that the Garrett composition that Almirall distinguished, like Torrent's ANDA product, utilized Carbopol as a polymeric viscosity builder and also included both sodium hydroxide and water. Ex. 1, p. 2-3 (Garrett patent) ("In preferred embodiments, the dapsone composition comprises about 5% dapsone*, about 0.85% carbomer 980*, about 25% diethylene glycol monoethyl ether (DGME), about 0.2% methylparaben*, about 0.2% sodium hydroxide, and about 68.75% purified water*.") (emphasis added). Thus, Almirall knew exactly what it was disclaiming when it distinguished Garrett by arguing that its claimed invention did "not include a carbomer such as Carbopol®." Almirall's corporate predecessor Allergan also told the Court presiding over its prior litigation against Taro Pharmaceuticals that in Taro's 5% dapsone product ██████████████████████████████████████ "Taro used Carbopol 980 alone as its [polymeric viscosity builder]." Case 1:17-cv-00663-JFB-SRF, D.I. 72 (Apr. 25, 2018 Redacted Letter from Jack Blumenfeld at p. 1); ████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ Almirall did not argue, as it does here, that ████████████████████████████████████ ████ was equivalent to the claimed polymeric viscosity builder or A/SA. *Id.* Accordingly, Almirall's new arguments concerning Torrent's ANDA product ring hollow.

### C. The Court Should Also Deny Almirall's Motion Because Almirall Unduly Delayed and an Amendment would be Prejudicial

The Court should also deny Almirall's Motion because Almirall has failed to show good cause for its post-hac amendment and Torrent would be prejudiced if Almirall's Motion were granted. Torrent identified argument-based estoppel as an infringement defense in the Notice letter it sent to Almirall in August 2020. Yet Almirall's original complaint, D.I. 1, contained none of the proposed allegations, which were all known to Almirall at the time. Almirall also had access to Torrent's entire ANDA before Torrent filed its motion for judgment on the pleadings on November 12, 2020.[1] D.I. 18. Even after seeing Torrent's motion, Almirall made no attempt to amend. Almirall instead made the conscious choice to oppose Torrent's motion by advancing frivolous

---

[1] Almirall also could have reviewed Torrent's ANDA with expert(s) before the filing of the motion for judgment on the pleadings, but declined to do so. D.I. 32, p. 9, n 3 & Ex. A (Oct. 22, 2020 Email).

arguments—*e.g.,* that the Court could not consider Torrent's ANDA or the pertinent file histories –that it abruptly abandoned at oral argument. *See* D.I. 50, p. 5 (citing Tr. 28-30).

Crucially, even though Almirall's infringement contentions disclosed its multi-component thickener theory, Almirall chose not to argue this theory in its opposition brief. This omission confirms that Almirall itself did not believe that its multi-component thickener theory would defeat prosecution history estoppel. Almirall should not be allowed to escape the consequences of its strategic decision by permitting it to raise a multi-component thickener theory in an amended complaint. *See* D.I. 50, p. 13, FN 7 ("Torrent's filing of its 12(c) motion and opening brief . . .created an obligation for Almirall to respond with whatever arguments it wished the Court to consider in deciding the motion. Almirall chose, for whatever reason, not to disclose in its brief that it believes it can prove infringement by equivalents based on the alleged presence of a multi-component thickener in Torrent's ANDA product.").

For the same reasons here, the Court should exercise its discretion to deny Almirall's Motion because Almirall unduly delayed seeking this relief. Torrent devoted substantial time, effort and money to file its motion for judgment on the pleadings, and the Court expended its limited resources to hear and decide Torrent's motion. Almirall has not offered any reason why its delay should be excused, nor could it in view of the fact that Almirall has asserted a "multicomponent" equivalence argument in six or seven previous litigations involving the identical NDA and patents. *See* D.I. Tr. p. 12, l. 24 – p. 13, l. 3. Almirall's delay tactics have already imposed an unnecessary burden on the Court and Torrent by necessitating additional submissions after oral argument. Allowing Almirall to restart the clock by filing a new complaint now would add to this burden by requiring Torrent to file a second motion for judgment on the pleadings and would reward Almirall for its gamesmanship. Just as Almirall is using the pendency of its motion to amend the complaint to argue to the FDA that final approval should not be granted, they will argue that the Court's allowance of an amended complaint vacates the Court's Order granting Torrent's motion for judgment on the pleadings and, thus, final approval should not be granted. This potential prejudice further warrants denying Almirall's Motion. *See Cureton*, 252 F.3d at 273 (Delay may become undue "when a movant has had previous opportunities to amend a complaint" but instead "delays making a motion to amend until after [judgment] has been granted to the adverse party," and when "allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.").

Respectfully Submitted,

*/s/ Eve H. Ormerod*

Eve H. Ormerod (#5369)

Enclosure

cc:     Clerk of Court (via CM/ECF)
cc:     All Counsel of Record (via email)